**MADE JS-6**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 11-4902-GW(FFMx) | Date | August 11, 2011 |
| Title | *Tadin, Inc., et al. v. ABG Holdings Inc., et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Pat Cuneo | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Steven L. Crane | Jonathan I. Feil |
| Steven L. Feldman | |

**PROCEEDINGS:**     **DEFENDANTS' MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER ACTION (filed 07/06/11)**

Court hears oral argument.  The tentative circulated and attached hereto, is adopted as the Court's final ruling.  Defendants' Motion to Dismiss Complaint Or, in the Alternative, to Transfer Action is **GRANTED IN PART.**  The Court dismisses this action for Plaintiffs to bring their claims as counterclaims in the Western District of Washington action.

|  | : | 05 |
|---|---|---|
| Initials of Preparer | JG | |

_**Tadin v. ABG Holdings, Inc.**_, Case No. CV-11-4902
Tentative Ruling on Motion to Dismiss Complaint or, in the Alternative, to Transfer Action

**Introduction**

Before the Court is the motion of Defendants ABG Holdings, Inc. ("ABG") and Antonio Garcia ("Garcia") (together, "Defendants") for an order dismissing the Complaint of Plaintiffs Tadin, Inc.("Tadin") and Jose M. Gonzalez ("Gonzalez") (together, "Plaintiffs") based on application of the so-called "first-to-file" rule. Alternatively Defendants seek an order transferring this action to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404(a). For the following reasons, Defendants' motion would be GRANTED, and Plaintiffs' claims DISMISSED to be re-filed as counterclaims in the Washington action.

**Background**

This litigation involves a dispute over payment for acquisition of a Washington business by its California competitor. Plaintiff Tadin is a California corporation with its principal place of business in Los Angeles, California. Compl. ¶ 1. Gozalez is its president and CEO. Id. at ¶ 2. Defendant ABG Holdings, Inc. ("ABG") is a Washington corporation formerly known as "Laboratorios Nueva Era, Inc." Compl. ¶ 3. Garcia is the president of ABG. Id. at ¶ 4.

Prior to November 10, 2010, ABG was in the business of manufacturing, packaging and selling herbal tea mixtures under the trade name "Dona Remedios." Id. at ¶ 11. Tadin was and remains in the business of packaging and selling herbal remedies, teas and supplements to distributors and retail grocery stores and markets as well as directly to consumers online. Id.

In 2008, Tadin entered the market for herbal teas for medicinal purposes with a product line similar to ABG's products, which Tadin trademarked "Los Remedios de Mama." Declaration of Antonio Garcia in Support of Defendants' Motion ("Garcia Decl.") ¶ 5. In April 2009, ABG instituted a trademark opposition in the U.S. Trademark Trial and Appeal Board to block the registration of Tadin's trademark. Id. at ¶ 6;

In October 2010, while the trademark opposition was pending, ABG approached Tadin concerning a possible purchase of its business. The parties negotiated an agreed upon purchase price of $400,000, payable $100,000 at the closing and $300,000 by means of a secured promissory note bearing 4% interest per annum payable ratably over 36 months. The parties thereafter signed a non-binding Letter of Intent dated October 26, 2010. Garcia Decl. ¶ 7, Exh. A.

On or about November 10, 2010, the parties entered into an "Agreement of Purchase and Sale of Assets" ("Agreement") under which ABG agreed to sell to Tadin: (1) trademarks, trade names and other associated intellectual property related to the "Tea Products;" (2) a website and web address through which "Tea Products" had been marketed; (3) recipes for the manufacture of the "Tea Products;" (4) equipment used to manufacture the "Tea Products;" (5) certain inventory; (6) "information and data concerning [ABG's] manufacturing processes, pricing data, [and] sales data;" (7) the name "Laboratorios Nueva Era, Inc.;" and (8) the goodwill of ABG. Compl. at ¶ 12. The Agreement expressly provides that "[t]his Agreement shall be construed in

-1-

accordance with, and governed by, the laws of the State of Washington as applied to contracts that are executed and performed within Washington." See Garcia Decl., Exh. B at 41.

As provided by the Asset Purchase Agreement, ABG dismissed its opposition to the registration of the competing "Los Remedios de Mama" trademark, which was granted registration on March 1, 2011. Declaration of Jonathan I. Feil in Support of Defendants' Motion (Feil Decl.) ¶¶ 5-6, Exhs. D, E.

Five months into the Promissory Note term, in April 2011, Tadin requested a reduction in future payments under the Promissory Note based upon supposed misrepresentations by ABG concerning the value of its assets and unilaterally cut its monthly payment for April by half. Garcia Decl. ¶¶ 11-12, Exh. C. ABG instituted an action seeking enforcement of the Note and Guaranty against Tadin and Gonzalez in Washington state court on May 5, 2011, which Tadin then removed to federal court. Feil Decl. ¶2, Exh. A. One day later, Tadin initiated this action seeking rescission, restitution and damages arising from alleged claims for misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of Cal. Bus. & Prof. Code § 17200.

On June 17, 2011, the parties filed a Stipulation in this action stating in pertinent part:

> The complaints in the Washington Action and the California Action involve the same parties and issues. The Parties therefore believe that the claims brought in the Washington Action and the claims brought in the California Action (collectively, the "Claims") should be resolved in the same judicial forum to serve judicial economy and to avoid inconsistent results. The claims asserted by Tadin, Inc. and Gonzalez as plaintiffs in the California Action would constitute compulsory counterclaims in the Washington Action if they are compelled to respond in that forum, and the claims asserted by ABG Holdings, Inc. as plaintiff in the Washington Action would likewise constitute compulsory counterclaims in the Washington Action if they are compelled to respond in this forum.
>
> The Parties, through their counsel as confirmed in this Stipulation, have agreed that the question of whether the Claims will proceed in the Washington Action or in the California Action should be determined by this Court. Specifically, the Parties have agreed that defendants in the California Action will bring a motion to dismiss or transfer the case (or similar motion) ("Motion") in this Court to be noticed for hearing on August 11, 2011. Pursuant to L.R. 7-3, counsel for Defendants and counsel for Plaintiffs have discussed the contemplated motion to dismiss or transfer the case to the Western District of Washington and discussed thoroughly the substance of the motion and any potential for resolution.

Stipulation (Doc. No. 8) ¶¶ H-I.

**Legal Standard**

The first-to-file rule allows a "district court to transfer, stay, or dismiss" the later-filed action. Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 623 (9th Cir. 1991). There is a thorough discussion of this rule in In Meru Networks, Inc. v. Extricom, Ltd., 2010 U.S. Dist. LEXIS 90212, (N.D. Cal. Aug. 31, 2010), a Northern District of California case of relatively recent vintage, wherein the district court explained:

> The first-to-file rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982). This rule promotes judicial efficiency and prevents the risk of inconsistent decisions that would arise from multiple litigations of identical claims. Accordingly, it "should not be disregarded lightly." Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 625 (9th Cir. 1991). At the same time, it is "not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." Pacesetter, 678 F.2d at 95. Thus, the Ninth Circuit has recognized exceptions to the first-to-file rule under various circumstances, such as bad faith, anticipatory suit, and forum shopping. Alltrade, 946 F.2d at 628. A court may also decline to apply the first-to-file rule when the balance of convenience weighs in favor of the later-filed action. See id. at 628.
>
> In applying the first-to-file rule, a court first looks at three threshold factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. See Alltrade, 946 F.2d at 625.

Meru Networks, 2010 U.S. Dist. Lexis 90212 at * 2-4.

**Analysis**

The parties do not appear to disagree that the "three threshold factors" for application of the first-to-file rule apply in this case, and none of articulated bases for exceptions to it - viz., bad faith, anticipatory suit, and forum shopping - are present. Plaintiffs nevertheless argue that the Court should not "mechanically" apply the "first-to-file rule" without considering whether Washington or California is actually the more appropriate forum to hear the parties disputes based on the "convenience of parties and witnesses" and "the interests of justice" under 28 U.S.C. § 1404(a). The Court would agree that the first-to-file rule should not be applied mechanically. Moreover, there is no apparent reason that the closeness in time of the two filings should not be considered in deciding whether to apply the rule. The Court need not go so far, however, as to adopt Plaintiffs' suggestion that the matter of priority of filing should be treated only as one factor to be considered in deciding where this lawsuit should be litigated. Even if the

Court were to disregard the first-to-file rule, however, it would likely conclude that Washington is the proper forum for this action.

The Alltrade court cautioned that the respective convenience of the two courts normally "should be addressed to the court in the first filed action" rather than to the court in the later-filed action. Alltrade, 946 F.2d at 628. Nevertheless, it observed that "in appropriate cases it would be relevant for the court in the second-filed action to give consideration to the convenience of the parties and witnesses." Id. Here, the parties have stipulated that this Court do so.

Section 1404(a) Factors

Under 28 U.S.C. § 1404(a), a district court has discretion to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (quoting Stewart Org. v. Ricoh Corp, 487 U.S. 22, 29 (1988)). To justify a transfer of venue a defendant must make "a strong showing of inconvenience to warrant upsetting the plaintiff's choice of the forum." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

In deciding whether to grant a transfer of venue, a district court considers a balance of private and public factors including: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of the litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). The convenience of witnesses is an important factor to be considered by the court when deciding the appropriateness of a transfer of venue. See A.J. Industries, Inc. v. United States District Court, 503 F.2d 384, 389 (9th Cir. 1974).

Venue is proper in both the Western District of Washington and the Central District of California.

The parties do not appear to dispute that venue would be proper in either Western Washington or Los Angeles. Nevertheless, Defendants note that Tadin is deemed to reside in the Western District of Washington, because of its extensive business contacts which make it subject to personal jurisdiction "at the time [the] action is commenced." Tadin sells nationally and supplies its products to numerous stores in Western Washington. Feil Decl. ¶8, Exh. F. By contrast, there is no residence-based venue against ABG and Garcia as defendants in the California Action because at the time the California Action was commenced, ABG had ceased its business dealings in California, due to the purchase of its business by Tadin. Moreover, "a substantial part of the events or omissions giving rise to the claim," occurred in Washington. 28 U.S.C. §1391(a)(2)). The case concerns the purchase of a Bellevue, Washington based business, and negotiation of the business purchase took place in both Western Washington and California. Tadin sent an employee to ABG's location in Bellevue, Washington to inspect ABG's machinery and arranged for its shipment from ABG's premises to Tadin's facility in California. Id. at ¶ 9.

-4-

<u>The location where the relevant agreements were negotiated and executed does not strongly favor either forum.</u>

Plaintiffs observe that, while negotiations occurred in both Washington and Los Angeles, the relevant agreements were executed in Los Angeles. The fact that the agreements were executed in Los Angeles does not weigh strongly in favor of the Court keeping this case. Western Washington could, as easily as Los Angeles, be characterized as the principal place of performance. Moreover, the Purchase Agreement provides that the contract should be construed and governed in accordance with Washington law. While it is unlikely that there is any unique application of Washington law that is relevant to claims and defenses in this matter, the Court would consider the parties' choice of law as weighing in favor of this action being heard in the Western District of Washington.

<u>Plaintiffs' choice of forum should not be given great weight because of the closeness in time of the two lawsuits.</u>

The Plaintiffs' choice of forum should not play a strong role in the Court's analysis of what is the appropriate forum. If the Court is willing to downplay the application of the first-to-file rule because the two lawsuits were filed so closely in time, it obviously would not be appropriate to reward Plaintiffs in this action by giving strong weight to their own choice of forum. This factor would be treated as a wash.

<u>The parties' contacts with the respective forums and  the contacts relating to the claims in the respective forums do not weigh strongly in favor of keeping the case in this district.</u>

Plaintiffs assert that the parties' contacts with the respective forums is a factor that weighs strongly enough in favor of the action being heard in this district to overcome the application of the first-to-file rule. Their essential argument is that the case belongs in this district because "[t]he fraud [allegedly] perpetrated upon Tadin was consummated in Los Angeles County when Garcia signed the purchase documentation in Los Angeles County on November 10, 2011." Opp. 2:26-28. In addition, Plaintiffs asserts that Tadin is located in Los Angeles, has no sales persons that travel to the State of Washington, and handles sales to Washington either by telephone or website purchases. Tadin does not have any officers, agents, employees, representatives, equipment or property in the State of Washington. Declaration of Jose Gonzalez in Support of Opposition to Defendant's Motion ("Gonzalez Decl.") ¶ 33. Moreover, Plaintiffs note, it was ABG that apparently initiated contact with Tadin to see if Tadin would be interested in acquiring it.

Conversely, however, viewed from the perspective of Defendants (who indisputably have fewer contacts with California than Plaintiffs have with Washington), the locus of these actions is in Washington. In Garcia's Second Declaration, he states:

> We are the offended parties in this dispute, by plaintiff's unilateral action five months after the closing of the purchase to stop payment on the promissory note. During those preceding five months – the peak season for the sale of medicinal herbal teas – Tadin and its owner received the full benefits of the assets LNE transferred,

-5-

including our brand, formulas, and distribution network – and they continue to receive those benefits on an ongoing basis.

Garcia Second Decl. ¶4. The Court would resist the parties' implicit invitations to consider the merits of their respective claims in ruling on this motion. Arguably, though, it might be observed that considering the respective claims at face value it would be more unfair to require ABG and Garcia to litigate in California than to require Tadin and Gonzalez to litigate in Washington.

### The availability of compulsory process arguably favors this district.

Plaintiffs assert that they will seek to call non-party witnesses from Los Angeles at trial to show that ABG misrepresented the extent of its customer list and its dollar sales. In particular, it wishes to call Farid Shalabi ("Shalabi"), who resides in the Los Angeles area and is the owner of a company called El Yerberito, which is located in Los Angeles County. Supposedly, Tadin learned after it acquired ABG that 90% (and not 60% as ABG had represented) of its business consisted of sales to El Yerberito. See Declaration of Steven L. Feldman ("Feldman Decl.") ¶ 9; Gonzalez Decl. ¶ 24. While compulsory process would not appear to be available to compel him to appear in court to give in person testimony, it is doubtful that this would present a very significant obstacle to Plaintiffs' ability to present their case.

### The ease of access to sources of proof probably does not favor either district.

Plaintiffs concede in their opposition that "presumably" all of the accounting records relating to the underlying transaction in this case are in Washington, but argue "all the other documentary evidence" is located in Los Angeles, primarily their own records and files and those of El Yerberito. This factor does not weigh strongly (if at all) in favor of keeping the action in this District.

**Conclusion**

The first-to-file rule creates a presumption (albeit a weak one in this case) in favor of transfer to the district where the earliest case was filed which Plaintiffs in this action have not overcome. In considering the section 1404 factors it does not appear that this District is an obviously better choice for litigating the parties' claims than the Western District of Washington. There is a suggestion by Defendants that, rather than transferring this case, it would be preferable for the Court to dismiss it and for Plaintiffs to bring their claims as counterclaims in the Washington action. Plaintiffs do not appear to take any position on that maneuver. Presumably, any objection ABG might raise based on such claims being untimely would be deemed to be waived.